**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| IN RE APPLICATION OF TOP MATRIX HOLDINGS LTD FOR AN ORDER TO TAKE DISCOVERY FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782 | Case No. 18-MC-00465(ER) |

## SUPPLEMENTAL DECLARATION OF REMO DECURTINS

I, Remo Decurtins, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States, as follows:

1.      I submit this supplemental declaration in support of Top Matrix Holdings Ltd ("<u>Top Matrix</u>" or "<u>Petitioner</u>")'s Reply Memorandum of Law In Support Of Petitioner's Application And Petition For An Order To Conduct Discovery For Use In A Foreign Proceeding Pursuant To 28 U.S.C. § 1782 ("<u>1782 Application</u>").  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the 1782 Application and accompanying Memorandum of Law.

2.      Unless otherwise indicated, all facts set forth in this declaration are based upon: (a) my personal knowledge; (b) my review of relevant documents, including the proposed subpoenas; and (c) information supplied to me by the Petitioner or its officers, directors, and employees, or professionals retained by them.

## A.      BACKGROUND AND QUALIFICATIONS

3.      I am an Associate at Quinn Emanuel Urquhart & Sullivan (Schweiz) GmbH.  I was called to the Swiss Bar in 2013 and to the New York Bar in July 2018.  I hold a Law degree from the University of Lucerne (*summa cum laude*) and an LL.M. from New York University.  A copy of my curriculum vitae is attached as **Exhibit A**.

1

**B.**     **PETITIONER CANNOT OBTAIN DISCOVERY FROM CREDIT SUISSE OR CREDIT SUISSE USA IN THE SWISS CRIMINAL PROCEEDINGS**

4.      As noted in the Petitioner's Memorandum of Law, ECF No. 4 at 9, on March 9, 2016, Petitioner moved to join as a "private claimant" (in the meaning of Article 104 Para. 1 Letter b of the Swiss Criminal Procedure Code) in the Swiss criminal proceedings against Mr. Lescaudron ("Swiss Criminal Proceedings").

5.      On March 21, 2016, Credit Suisse AG ("Credit Suisse") objected to Petitioner's application to join the Swiss Criminal Proceedings against Mr. Lescaudron.  A true and correct copy of that objection is attached as **Exhibit B** and **C**.

6.      It is my understanding that Credit Suisse objected Petitioner's application because it was concerned that Petitioner would be able to obtain documents related to Mr. Lescaudron's employment with Credit Suisse.  These documents could, in turn, expose some of Credit Suisse's wrongdoings in supervising and controlling Credit Suisse's Russian Desk and in particular the poor management and fraudulent actions of Mr. Lescaudron with respect to Petitioner's funds.

7.      Over Credit Suisse's objection, Petitioner was on April 8, 2016 formally admitted by the Swiss Prosecutor as a private claimant in the Swiss Criminal Proceedings against Mr. Lescaudron.  A true and correct copy of the order admitting Petitioner as a private claimant is attached as **Exhibit D** and **E**.

8.      For example, on November 12, 2018, as part of the Swiss Criminal Proceedings, Credit Suisse—being ordered to do so by the competent court—disclosed information related to the bank's compensation and evaluation of Mr. Lescaudron.  These documents show that, in view of the extraordinary high returns generated by Mr. Lescaudron, Credit Suisse chose to turn a blind eye on Mr. Lescaudron's blatant compliance issues.  Rather, Credit Suisse paid extremely

high bonuses to Mr. Lescaudron and gave him positive annual reviews.  A true and correct copy of that disclosure is attached as **Exhibit F** and **G**.

9.     It would be highly atypical that a request from a co-private claimant (such as the Petitioner) to take evidence from another co-private claimant (such as Credit Suisse) would be granted.  *See* Bürgi Decl. ¶ 10.  Furthermore, Mr. Lescaudron has been convicted by the Geneva criminal court of first instance.  This is a clear indication that the evidence (already) collected by the Swiss Prosecutor was sufficient to support the indictment *against Mr. Lescaudron*.  Therefore, any request by Petitioner for information relating to (a) Credit Suisse's dealings related to the Lescaudron matter, (b) any reports from regulators, including the FINMA Report which details Credit Suisse's wrongdoings in the Lescaudron matter and with respect to the handling of the client relationship with the Petitioner, or (c) the High Risk Financial Products, or for Mr. Brady Dougan's testimony, through the Swiss Criminal Proceedings would most likely have been denied.  *See e.g.* Subpoena Request No. 1 ("Any Documents, including any preliminary or final reports, findings, or assessments, from or provided to any Regulator related to Mr. Lescaudron's Wrongdoings"); Subpoena Request No. 2.

10.     In fact, it is my understanding that some co-private claimants in the Swiss Criminal Proceedings requested documents from Credit Suisse but these requests were denied.

## C.     CONCILIATION WAS UNSUCCESSFUL AND PETITIONER MUST NOW SUE TO OBTAIN COMPENSATION FOR CREDIT SUISSE'S WRONGDOINGS

11.     As noted in my first declaration, ECF No. 5 at ¶13, on June 30, 2017, Petitioner filed a lawsuit against Credit Suisse with the competent tribunal in the Canton of Geneva in Switzerland requesting mandatory conciliatory proceedings.  Conciliatory proceedings are intended to resolve the dispute amicably with the assistance of a Justice of the Peace (a judicial

officer).  Petitioner had filed the request for conciliatory proceedings to attempt such a resolution.

12.     However, I understand that Credit Suisse failed to appear to the conciliatory hearing set by the Justice of the Peace, thereby rendering the conciliatory process futile.

13.     At that time, Petitioner therefore determined not to proceed with submitting a lawsuit with the competent court of first instance.  Any discovery rights that might have been available through the conciliatory proceedings initiated by petitioner on June 30, 2017 lapsed when the lawsuit did not proceed.

14.     The Petitioner now intends to file a revised lawsuit with the Zurich Commercial Court, a highly specialized court for commercial disputes, inter alia, banking and finance matters, at Credit Suisse's domicile.

15.     In its Opposition, Credit Suisse states that "*to bring suit against CS AG in a Geneva court, Top Matrix would need to start the process all over again*", thereby referring to the mandatory conciliatory proceedings in Geneva (Opp. 11).  Credit Suisse, however, omits to say that Petitioner can directly bring suit against Credit Suisse at any time in the Zurich Commercial Court—i.e. without having to "restart" any of the mandatory conciliatory proceedings. *See also* Bürgi Decl. ¶¶ 20-22.

D.     <u>**SWISS ACTION TO BE FILED IN THE ZURICH COMMERCIAL COURT**</u>

16.     Petitioner has invested considerable resources in preparing the lawsuit to be filed with the Zurich Commercial Court seeking damages from Credit Suisse. The Petitioner has prepared a draft statement of claim of over hundred pages ("<u>Swiss Litigation Complaint</u>"). Petitioner is finalizing its draft Swiss Litigation Complaint, and it is currently expected that the

Swiss Litigation Complaint will be filed in the first quarter of 2019 with the Zurich Commercial

Court.  Accordingly, no conciliatory proceedings will be necessary before filing.

17.     As explained in my first declaration, *see* ECF No. 5, Petitioner's Swiss Litigation

Complaint will allege that Credit Suisse breached numerous duties in connection with (1) Mr.

Lescaudron's fraudulent scheme, and (2) high risk financial products sold to Petitioner.

18.     In particular, and as already detailed in my first declaration, Credit Suisse

breached several of its duties under the applicable laws and regulations, including its contractual

obligations vis-à-vis Petitioner, FINMA regulations and Swiss Banking Association guidelines.

Credit Suisse breached these duties, inter alia, as follows:

19.     Credit Suisse failed to implement adequate monitoring, risk management and

supervisory mechanisms to prevent and detect Mr. Lescaudron's fraudulent scheme and to

supervise his conduct, the Russian Desk at Credit Suisse Geneva and the client relationship with

the Petitioner in general.  As identified in the FINMA Press Release, Mr. Lescaudron—who held

about $2.5 billion in Credit Suisse's assets under management at the time—repeatedly breached

the bank's compliance regulations over a number of years.  Credit Suisse did not discipline

Mr. Lescaudron for those breaches; instead Credit Suisse continued to compensate

Mr. Lescaudron with extremely high bonuses and to give him positive annual reviews.  Credit

Suisse also failed to meet its information and warning duties towards Petitioner concerning the

risks associated with certain types of investments, such as seven high-risk financial products that

were sold to petitioner between May 28, 2008 and September 16, 2008 ("Selected High-Risk

Financial Products").  *See* ECF No. 5, Exhibit A (list of selected high-risk financial products).  In

fact, two of those high risk financial products were issued by an affiliated entity of Credit Suisse

(the "Credit Suisse Certificates").  Petitioner has suffered nine-digit losses in connection to those investments.

20.      Further, Credit Suisse violated conflict of interest rules by simultaneously acting as issuer, broker and paying agent in a number of products sold to Petitioner, including the Credit Suisse Certificates sold as part of the Selected High-Risk Financial Products.

21.      Moreover, Credit Suisse failed to provide Petitioner with prompt notice of any potential issues in relation to its investments.  For example, Credit Suisse did not detect that Mr. Lescaudron had opened sub-accounts without proper authorization by the bank and by Petitioner. In one instance, Mr. Lescaudron opened a sub-account labelled "Advisor IPO."  Through the "Advisor IPO" account, Mr. Lescaudron conducted a multi-year scheme of unauthorized trades. While Credit Suisse should have monitored and should have been aware of Mr. Lescaudron's wrongdoing at the time, Credit Suisse admitted that it became aware of the same in September 2015.  However, the bank only informed Petitioner of some (but not most, and certainly not all) of the issues with Petitioner's accounts on December 30, 2015.  Credit Suisse has refused to provide Petitioner with all relevant documentation in connection to Petitioner's relationship with the bank.  The information that Credit Suisse has provided proved to be incomplete and at times inaccurate and misleading.  For example, Credit Suisse alleged that "there are no records available on the client file with regards to any documents and communications relating to any meetings between Mr. Malkin and CEO Brady Dougan." *See* Calamari Decl., Ex. 50-51 (Letters from Credit Suisse, June 20, 2018).  However, this is directly contradicted by evidence from the defendant in the Swiss Criminal Proceedings.  A true and correct copy of the transcript for those proceedings, along with a certified translation are attached as **Exhibit H** and **I**.  In those

proceedings Mr. Lescaudron explicitly states that Mr. Brady Dougan "met" with Mr. Vitaly Malkin to "discuss investment strategy." **Exhibit H** at 7.

### E.   DISCOVERY EFFORTS IN SWITZERLAND

22.     Petitioner has attempted to obtain information directly from Credit Suisse. But Credit Suisse denied Petitioner's requests to information it is entitled to under Swiss law. A banking client also has a contractual right under Swiss law to obtain from its bank any information and documents pertaining to the bank account relationship. *See* Bürgi Decl. ¶ 14. Under the Swiss Data Protection Act ("SDPA"), a banking client also has the right to obtain from its bank any information relating to the client's accounts and how the bank deals with those accounts. *See* Bürgi Decl. ¶ 15. From January 2016 to August 2018 , Petitioner made a number of unsuccessful requests for information relating to Lescaudron's Wrongdoings and Petitioner's investments with the bank. *See* Bürgi Decl. ¶¶ 16-17 & Ex. D. Information that was selectively provided by Credit Suisse proved to the incomplete and at times inaccurate and misleading, which led to further questions and investigation.

23.     For example, on April 16, 2018, Petitioner wrote to Credit Suisse requesting for a number of documents relating to, inter alia: (a) the bank's knowledge and supervision of Mr. Lescaudron's wrongdoings, (b) correspondence and reports from or to regulators, and (c) Petitioner's accounts. *See* **Exhibit J** (Petitioner's April 16, 2018 letter to Credit Suisse requesting documents).

24.     On May 17, 2018, Credit Suisse responded with an absolute refusal to disclose any documents pertaining to (a) and (b) on "privilege and confidentiality" grounds, and only selectively chose to disclose certain information pertaining to (c), whereas the disclosure of the most critical requests, which could have a negative impact on Credit Suisse's position in a

lawsuit, was refused.  *See* **Exhibit K** (Credit Suisse's letter of May 17, 2018 to Petitioner).  It is

uncertain if such refusal would be upheld by a Swiss court.  *See* Bürgi Decl. ¶ 20.

25.     Petitioner has not made any pre-litigation discovery requests in Switzerland

because the necessary requirements for pre-litigation discovery in Switzerland pursuant to the

Swiss Civil Procedure Code would not be fulfilled and such action for the information sought in

the Section 1782 Subpoenas is without prospects.  *See* Bürgi Decl. ¶¶ 27-28.  In particular, under

Swiss procedural laws, a plaintiff can obtain pre-litigation discovery only under exceptional

circumstances.  Among others, Plaintiff needs to show that it has a "legitimate interest" and it

needs to specify with particularity the nature and content of the document it is requesting.  *See*

Bürgi Decl. ¶ 25.  Given Credit Suisse's repeated refusal to produce relevant documents and

information to Petitioner, it is currently not possible for Petitioner to allege the nature and

content of the documents it seeks with the particularity that would allow for pre-litigation

discovery.

26.     To be clear, Petitioner is not seeking information relating to any other client but

for Petitioner.  Swiss bank secrecy laws are therefore not implicated and Credit Suisse's

concerns are thus ill-founded.  *See* Bürgi Decl. ¶¶ 30-32.  To the extent that Petitioner seeks

information relating to its own accounts and the High Risk Financial Products, it hereby waives

any bank secrecy rights for purposes of discovery in the Section 1782 proceeding.[1]

27.     Based on my understanding and the opinion of Mr. Bürgi, the confidentiality and

protective order proposed by Petitioner in this action would be viewed favorably by the Zurich

---

[1]     To the extent that disclosure of Petitioner's information would incidentally disclose information of other clients, Petitioner accepts that the latter may be redacted and/or subjected to the terms of a confidentiality or protective order (such as the one proposed by Petitioner to Respondents on December 8, 2018).

Commercial Court as evidence that confidential and privileged information is adequately protected. *See* Bürgi Decl. ¶¶ 33, 35.

**F.**     **SWISS COURTS' RECEPTIVENESS TO SECTION 1782 APPLICATION AND NON-CIRCUMVENTION OF SWISS PROOF-GATHERING POLICIES**

28.     Based on the foregoing and on the opinion of Mr. Bürgi, Petitioner has no reason to believe that the Zurich Commercial Court would not be receptive to the judicial assistance requested in the 1782 Application, and the request does not seek to circumvent any foreign proof-gathering restrictions or other policies of Switzerland.  Quite to the contrary, the discovery requested by the Subpoenas in Petitioner's 1782 Application would be welcomed in the Zurich Commercial Court. *See also* Bürgi Decl. ¶¶  40-43.

29.     Petitioner is unable to seek the discovery requested here in Switzerland because the Respondent entities, which are all New York-based persons, are not within the subpoena power of any Swiss court or proceeding.  *See also* Bürgi Decl. ¶ 23.  As a result, Petitioner has filed this 1782 Application.  Petitioner does not seek information from Credit Suisse in this 1782 application and only seeks information from Credit Suisse entities based in the United States.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 under the laws of the

United States that the foregoing is true and correct.

Executed on December 18, 2018
in Zurich, Switzerland.

REMO DECURTINS