UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE APPLICATION OF TOP MATRIX
HOLDINGS LTD FOR AN ORDER TO
TAKE DISCOVERY FOR USE IN A
FOREIGN PROCEEDING PURSUANT TO
28 U.S.C. § 1782.

**<u>AMENDED</u>**
**<u>OPINION AND ORDER</u>**

18 Misc. 465 (ER)

---

<u>Ramos, D.J.:</u>

Top Matrix Holdings Ltd. ("Top Matrix" or "Petitioner") is a company established by Credit Suisse AG ("Credit Suisse") on behalf of Vitaly Malkin ("Malkin").[1] Top Matrix alleges that Credit Suisse failed to prevent and detect a fraudulent scheme perpetrated by its former Russia Desk Relationship Manager Patrice Lescaudron ("Lescaudron"), causing hundreds of millions of dollars in damages as a result. Accordingly, Top Matrix plans to file suit against Credit Suisse in Switzerland.

Top Matrix applied for court orders to conduct pre-litigation civil discovery for information it claims to be highly material to its anticipated Swiss litigation pursuant to Title 28, United States Code, Section 1782, from wholly-owned U.S. subsidiaries of Credit Suisse, including Credit Suisse Holdings (USA) Inc., Credit Suisse (USA) Inc., Credit Suisse Securities (USA) LLC, and Credit Suisse Asset Management, LLC (collectively "Credit Suisse USA"), and Brady W. Dougan ("Dougan"), former Chief Executive Officer ("CEO") and Member of the Executive Board at Credit Suisse, in the form of a subpoena *duces tecum* and subpoena *ad testificandum*, respectively. Credit Suisse USA and Dougan argue that the applications are unduly onerous and better suited to Swiss courts. Accordingly, they ask the Court to deny the

---

[1] On request of Top Matrix, Doc. 52, this opinion and order amends Opinion and Order, Doc. 48 pursuant to Federal Rule of Civil Procedure 60(a).

applications.  For the reasons set forth below, Top Matrix's applications are GRANTED in part and DENIED in part.

## I.      BACKGROUND

Credit Suisse is a multinational bank and financial services holding company based in Zurich, Switzerland.  Memorandum of Law in Support of Petitioner's Ex Parte Application for an Order to Conduct Discovery ("Disc. Appl."), 4, Doc. 4.[2]  It maintains a presence in 50 countries, including the United States, through multiple wholly owned subsidiaries and the headquarters of its investment banking department in New York.  *Id*. at 5, 15.

After selling the shares of two companies they helped to establish, Malkin, a businessman and former Russian senator, and his then-business partner Bidsina Ivanishvili ("Ivanishvili"), the former Prime Minister of Georgia, engaged Credit Suisse to manage their profits from the deals. *Id*. at 4, 7.  Credit Suisse established Top Matrix on Malkin's behalf as part of a trust and offshore company structure on January 4, 2005.  *Id*. at 7.  In March and April 2005, Top Matrix and Credit Suisse entered into "Discretionary Portfolio Management Agreements," allowing Credit Suisse to manage the portfolio of Top Matrix.  *Id*.  Top Matrix entrusted approximately $700 million with Credit Suisse's Geneva branch.  *Id*.

Dougan served as the CEO of Credit Suisse from May 2007 to June 30, 2015, a period spanning the majority of Top Matrix's relationship with Credit Suisse.  *Id.* at 6, 8.  Malkin claims to have met Dougan on at least one occasion.  *Id*. at 8.  Dougan currently resides in Greenwich, Connecticut and works in the New York office of Scepter Partners, an entity unrelated to Credit Suisse.  *Id*. at 6.

---

[2] Both Top Matrix and Credit Suisse USA rely on similar (if not identical) facts.  Accordingly, the Court draws from the undisputed facts contained in the Disc. Appl. and Respondents' Opposition to Application for Discovery ("Response"), Doc. 21.  All references to the Disc. Appl. and Response incorporate the documents cited therein.

In 2006, Patrice Lescaudron became the Credit Suisse Geneva's Russia Desk Relationship Manager, taking over responsibility of Top Matrix's accounts and those of other Eastern European clients. *Id.* at 8. Lescaudron managed approximately $2.5 billion in assets at Credit Suisse, testifying that nearly half of his portfolio consisted of assets from Malkin and Ivanishvili. Calamari Decl. Ex. 26 at 3 ("Lescaudron H'rg Minutes, Office of the Public Prosecutor, Republic and Canton of Geneva, Nov. 11, 2016"). Lescaudron's transactions on behalf of Credit Suisse clients included shares listed on NASDAQ, such as a purchase of 20% of Raptor Pharmaceuticals' shares on behalf of Ivanishvili. Disc. Appl. at 16. Lescaudron received positive employee assessments during his tenure, despite repeatedly breaching Credit Suisse's compliance regulations. Calamari Decl. ¶ 33(a).

In 2015, Credit Suisse discovered that Lescaudron had perpetrated a fraudulent scheme falsifying trades and distributing false statements in his role at Credit Suisse, leading the company to launch an investigation into his dealings. *Id.* ¶ 23. Lescaudron admitted to "trading without clients' authorization, purchasing investments at higher-than-agreed quantities, trying to cover losses and submitting fabricated statements to clients to disguise losses." *Id.* Credit Suisse terminated Lescaudron on September 22, 2015, *Id.* and disclosed his scheme to U.S. investors on March 24, 2016 in a 20-F filing. Calamari Decl. ¶ 42, Ex. 45 ("Credit Suisse Annual Report 2016") at 382. Top Matrix claims that as a result of U.S. disclosure requirements, Credit Suisse USA likely reviewed information related to Lescaudron's wrongdoings. Disc. Appl. at 16.

Credit Suisse brought criminal charges against Lescaudron in December 2015 in Switzerland, later joined by Top Matrix on March 9, 2016. *Id.* at 9. He was charged with fraud, forgery, and criminal mismanagement on June 26, 2017, and convicted on February 9, 2018. *Id.* He was sentenced by the Geneva Criminal Court on February 9, 2018, to five years in prison,

banned from engaging in banking activities for a period of four years, and ordered to pay damages of approximately $130 million.  *Id*. at 9–10.

As a result of Lescaudron's activities, the Swiss Financial Market Supervisory Authority ("FINMA") conducted an investigation and enforcement proceeding into Credit Suisse's management of Lescaudron.  Disc. Appl. at 2.  FINMA announced its findings on September 17, 2018, stating that Credit Suisse failed to adequately manage the risks from its business relationships between its Eastern European clients, including Malkin, and that it exhibited "organizational deficiencies . . . and lack of effective corrective intervention."  Calamari Decl. ¶¶ 25–27, Ex. 43 ("FINMA Press Release") at 2–3.  FINMA also found that Credit Suisse's supervision of Lescaudron was inadequate due to his history of breaching the bank's compliance regulations "repeatedly and on record over a number of years."  FINMA Press Release at 3. Credit Suisse has also been the focus of multiple investigations in the United States, the subjects of which include tax evasion and sales of residential mortgage-backed securities ("RMBS") in the run-up to the 2008 financial crisis.  Disc. Appl. at 2.  As a result, Credit Suisse agreed to appoint Neil Barofsky, a New York-based lawyer, as U.S. monitor to report on implementation of internal controls mandated by the U.S. Department of Justice as part of its consent order and settlements relating to its tax evasion and RMBS cases.  *Id*. at 3.

As a result of Lescaudron's dealings and Credit Suisse's alleged failure to monitor him, Top Matrix filed suit against Credit Suisse on June 30, 2017, requesting mandatory conciliatory proceedings to recover hundreds of millions of dollars in damages from high risk financial products sold to Top Matrix.  Amended Declaration of Remo Decurtins ("Decurtins Decl."), ¶¶ 11–13, Doc. 7.  Top Matrix ultimately allowed the proceeding to lapse, and it plans to file a new claim in the Swiss court system against Credit Suisse.  *Id*. ¶¶ 13–14.  Top Matrix claims that

4

Credit Suisse failed to meet its information and warning duties; violated conflict of interest rules; failed to provide prompt notice; and failed to complete requisite banking documentation. Disc. Appl. at 12–15. Top Matrix plans to allege in its new claim that Credit Suisse breached numerous duties in connection with Lescaudron's scheme and the high risk financial products he caused to be sold to Top Matrix. Decurtins Decl. ¶ 15.

Top Matrix alleges that in the course of its preparations, Credit Suisse has failed to provide it with relevant documentation. Disc. Appl. at 17. Accordingly, Top Matrix filed an application pursuant to 28 U.S.C. § 1782 for an order authorizing it to obtain limited discovery from Credit Suisse USA and Dougan for information it believes to be within their possession and highly material to the anticipated litigation. *Id.* Specifically, Top Matrix requests from Credit Suisse USA: (1) any and all documents and communications relating to Lescaudron's wrongdoings; (2) any and all documents and communications relating to the creation, marketing, sale, and evaluation of selected high-risk financial products between January 1, 2008 through December 31, 2008; (3) any and all documents and communications to or from Barofsky relating to Lescaudron's wrongdoings; and (4) any and all documents and communications relating to the management of the investments by the trust and offshore company structure established by Credit Suisse. Calamari Decl. Ex. A ("Proposed Order"). Top Matrix seeks to depose Dougan to ask about his personal knowledge relating to topics likely to include: (1) Lescaudron's wrongdoings; (2) any meetings or correspondence related to Malkin or any company for which he is the beneficial owner; (3) the selected high-risk financial products; (4) correspondence with Barofsky; and (5) general policies and procedures at Credit Suisse to the extent applicable to Malkin's account. Declaration of Evan Glassman ("Glassman Decl."), Ex. 1 ("Wentworth-Ping Email Nov. 6, 2018"), Doc. 25.

Credit Suisse has denied any knowledge of and responsibility for Lescaudron's wrongdoing and has refused to compensate Top Matrix for its losses. Decurtins Decl. ¶ 12. Credit Suisse USA denies a "nexus between Credit Suisse USA and the underlying facts." Response at 2. Dougan claims to possess no personal knowledge of Malkin's relationship to Lescaudron. Declaration of Brady W. Dougan ("Dougan Decl."), ¶¶ 3, 5, Doc. 22.

## II.   RELEVANT LAW

Pursuant to Section 1782, "[t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." 28 U.S.C. § 1782(a). Section 1782 allows discovery for anticipated litigation of a "criminal, civil, administrative, or other nature" and within "reasonable contemplation, but need not be 'pending' or 'imminent.'" *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004). To obtain a court order for discovery Under Section 1782, an applicant must establish the following three statutory requirements

> (1) that the person from whom discovery is sought reside[s] (or [can] be found) in the district of the district court to which the application is made, (2) that the discovery [is] for use in a proceeding before a foreign tribunal, and (3) that the application [is] made by a foreign or international tribunal or "any interested person."

*In re Edelman*, 295 F.3d 171, 175–76 (2d Cir. 2002) (citation omitted).

"Once a district court is assured that it has jurisdiction over the petition, it *may* grant discovery under § 1782 *in its discretion*." *Kiobel v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018) (emphases added). "To guide district courts in the decision to grant a Section 1782 petition, the Supreme Court in *Intel* [*Corp. v. Advanced Micro Devices, Inc.*], 542 U.S. 241 [(2004)], discussed non-exclusive factors . . . to be considered in light of the 'twin

6

aims' of Section 1782: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" *Id.* (citation omitted). The four discretionary *Intel* factors are as follows:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which case "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought form a nonparticipant in the matter arising abroad," given that "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence;"

> (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;"

> (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and

> (4) whether the discovery request is "unduly intrusive or burdensome."

*Intel*, 542 U.S. at 264–65; *see also Kiobel*, 895 F.3d at 244 (quoting same).

## III.   DISCUSSION

In this case, Credit Suisse USA challenges the propriety of court-ordered discovery pursuant to Section 1782 on both statutory and discretionary grounds. Response at 2. In its response, however, Credit Suisse USA did not dispute that Top Matrix, at a minimum, has satisfied the first and third statutory elements of Section 1782. *Id.* Accordingly, in the analysis below, the Court only addresses the second statutory element, ultimately finding authority to grant Top Matrix's application.

### A.  The Requirement of a Foreign Proceeding

The second statutory factor provides that discovery must be "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a). Credit Suisse USA asserts that Top

7

Matrix has not met the statutory foreign proceeding requirement, arguing that Top Matrix has not actually initiated a proceeding or objectively indicated its intent to litigate. *Id*. at 12. Top Matrix contends that evidence of its anticipated litigation has been sufficiently demonstrated. Disc. Appl. at 24.

In considering whether a contemplated litigation meets this requirement, the Court must ask (1) whether the proceeding is adjudicative in nature; and (2) if the litigation is sufficiently contemplated. *Intel*, 542 U.S. at 259. Swiss courts have consistently been considered to be sufficiently adjudicative to meet the Section 1782 "tribunal" requirement. *In re Grynberg* 223 F. Supp. 3d 197, 201 (S.D.N.Y. 2017). In order for a "proceeding" before Swiss courts to be sufficiently anticipated, such proceeding need not be "pending" or "imminent," but must be "within reasonable contemplation." *Intel*, 542 U.S. at 259. The Second Circuit has interpreted "reasonable contemplation" to require "some objective indicium" or "some concrete basis" of petitioners' intent to initiate a foreign proceeding. *Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 123–24 (2d. Cir. 2015). This Circuit has found that sworn statements attesting to petitioners' intent to litigate and describing the legal theories on which they plan to rely are sufficiently concrete to meet the statutory requirement. *In re Hornbeam Corp.*, 722 F. App'x 7, 9–10 (2d Cir. 2018) (finding that statements that represented applicants' intent to litigate and "articulated a theory on which it intended to litigate" provided sufficiently concrete basis); *In re Furstenberg Finance SAS*, No. 18-MC-44 (JGK) 2018 WL 3392882, at *4 (S.D.N.Y. July 12, 2018) (finding that a sworn statement that applicants intended to file a criminal complaint that "articulated a specific legal theory on which they intend to rely" met the statutory requirement).

Here, Top Matrix has submitted a sworn statement from its Swiss lawyer attesting to its intent to litigate in Switzerland and providing the legal theories on which it intends to rely. Decurtins Decl. ¶ 15.[3]  Credit Suisse USA argues that relying on "counsel's assertion" is insufficiently objective and indicative of inappropriate "fishing expeditions."  Response at 12–13 (quoting *In re Certain Funds, Accounts, and/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Group, LLC.*, No. 14 Civ. 1801, 2014 WL 3404955, at *6 (S.D.N.Y. July 9, 2014), aff'd 798 F.3d 113 (2d Cir. 2015)).  However, in the cases on which Credit Suisse USA relies, the petitioners did not provide the legal theories under which they planned to litigate, and only discussed the possibility of initiating litigation.  *Id*. at *7 (finding that retention of counsel to investigate anticipated claims was insufficient).  Top Matrix, on the other hand, has provided objective indicia — here, sworn statements describing the legal theories on which it plans to rely — demonstrating its intent to initiate litigation.  Decurtins Decl. ¶¶ 14–15.  Top Matrix thus meets the foreign proceeding requirement.

## B.  Discretionary Factors

Having established that Top Matrix meets the statutory requirements, the Court turns to the four discretionary factors.  The Court is allowed "wide discretion" to issue discovery once the statutory requirements are met.  *In re Application of Furstenberg Fin. SAS*, 334 F. Supp. 3d 616, 619 (S.D.N.Y. 2018) (quoting *Application of Esses*, 101 F.3d 873, 876 (2d Cir. 1996)), *aff'd sub nom In re Furstenberg Fin. SAS*, No. 18-3158, 2019 WL 4127332 (2d Cir. Aug. 30, 2019) (summary order).  Here, Respondents challenge the motion on the first, third and fourth discretionary factors, and the Court accordingly limits its analysis to these factors.

---

[3] Top Matrix intends to allege that Credit Suisse "breached numerous duties in connection with (1) Mr. Lescaudron's fraudulent scheme, and (2) high risk financial products sold to Petitioner."  Decurtins Decl. ¶ 15.

*1.  Factor One: Within the Foreign Tribunal's Jurisdictional Reach*

Credit Suisse USA argues that even though it and Dougan are outside of the Swiss courts' jurisdiction, the *information* that Top Matrix seeks is within the Swiss courts' jurisdiction. Response at 14.  The Court finds this argument inconsistent with the language of the first *Intel* factor and its application, and accordingly decides Factor One in Top Matrix's favor.

The first *Intel* factor states that "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a non participant."  *Intel*, 542 U.S. at 264.  Parent companies who are "participants" to foreign proceedings are considered separate legal entities from their subsidiaries and affiliates for the purpose of Section 1782 motions.  *In re del Valle Ruiz*, 939 F.3d 520, 523 (2d Cir. 2019) (evaluating Section 1782 request from foreign parent company separately from its U.S. affiliate).  If the information requested from non-parties is located abroad, the Court is not categorically barred from compelling discovery of the evidence; however, the Court is still encouraged to consider the requested information's location.  *Id*. at 533.

Here, Credit Suisse USA concedes that it and Dougan are not parties to the contemplated Swiss litigation but argues that since the information is likely within Credit Suisse's possession, Top Matrix "really seeks discovery from Credit Suisse AG, which is within the Swiss court system's jurisdictional reach."  Response at 16.  Credit Suisse USA points to instances where the court declined to compel discovery because the "documents that the subpoena seeks are also in the possession of parties to the foreign proceeding."  *In re OOO Promnefstroy*, No. 19 Misc. 99 (RJS), 2009 WL 3335608 at *7 (S.D.N.Y. Oct. 15, 2009).

Although Credit Suisse is also likely in possession of the requested information, the Second Circuit recently made clear that discovery of evidence located extraterritorially can still be compelled under Section 1782.  *In re del Valle Ruiz* 939 F.3d at 524.[4]  That the information is located in Switzerland is not relevant, and by extension, that information possessed by Credit Suisse USA is also likely possessed by Credit Suisse in Switzerland is not relevant.  Accordingly, even though the first *Intel* factor asks courts to consider non-party involvement in the proceedings for the purpose of accessing information that is otherwise unavailable to foreign courts, the Court is not asked to consider whether the requested evidence is located extraterritorially, but whether the "person from whom discovery is sought is a *participant in the foreign proceeding*."  *Intel*, 542 U.S. at 264 (emphasis added).  Notwithstanding the likelihood that Credit Suisse also has the requested information, Credit Suisse USA and Dougan have separate legal personalities, and neither is within the jurisdiction of the Swiss courts.  As the court is not prohibited from compelling discovery of information in possession of both a parent company and its subsidiary, the first *Intel* factor is adequately met.

### 2.  *Factor Three: Circumvents Foreign Restrictions*

The third *Intel* Factor invites the Court to consider whether the motion "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States."  *Intel*, 542 U.S. at 265.  Credit Suisse USA argues that Top Matrix's motion is an attempt to avoid the procedural restrictions of Swiss litigation and, accordingly, fails

---

[4] Credit Suisse USA cites *In re Application of Kreke Immobilien KG*, 2013 WL 5966916, *In re Godfrey*, 526 F.Supp.2d 417, *In re Microsoft Corporation*, 428 F. Supp. 2d 188, and *In re OOO Promnefstroy*, No. M 19-99 (RJS), 2009 WL 3335608 at *7 (S.D.N.Y. Oct. 15, 2009) in its first and third *Intel* factor analysis.  Response at 14–15, 18–19, 22–25.  The Second Circuit, however, abrogated these cases with its decision in *In re del Valle Ruiz* on October 7, 2019, after Credit Suisse USA replied to Top Matrix's application for discovery on December 4, 2018.  *In re del Valle Ruiz* 939 F.3d 520, 533 (2d Cir. 2018).

the third *Intel* factor.  Response at 18.  The Court finds, however, that Top Matrix's motion meets the requirement under *Intel* and decides Factor Three in its favor.

Applicants are not required to exhaust all available remedies in the foreign jurisdiction before filing a Section 1782 application.  *Mees v. Buiter*, 793 F.3d 291, 303 (2d Cir. 2015).  Accordingly, failure to exhaust all remedies does not demonstrate an attempt to circumvent foreign restrictions.  *Id*.  Additionally, Section 1782 does not require that the evidence requested be admissible or discoverable in the foreign tribunal.  *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) (extending *Intel*'s rejection requirements on discoverability to admissibility).  Attempts by district courts within this Circuit to consider discoverability or admissibility in their Factor Three analysis were later abrogated.  *See In re del Valle Ruiz* 939 F.3d 520.  The Court has, on the other hand, routinely rejected Section 1782 motions under Factor Three when applicants have already exhausted available remedies in foreign tribunals and seek another "bite at the apple" after having already been denied recourse.  *In re Escallón*, 323 F. Supp. 3d 552 (S.D.N.Y. 2018) (rejecting request to compel testimony when individual already testified by order of Colombian court); *In re WinNet R CJSC*, No. 16MC484 (DLC), 2017 WL 1373918 at *8 (S.D.N.Y. Apr. 13, 2017) (rejecting a request to compel discovery after Russian court already decided the issue on the merits).

Credit Suisse USA argues that Top Matrix is seeking evidence that would otherwise be rejected by the Swiss court on account of discovery and confidentiality restrictions.  Response at 18.  While it acknowledges that there are no discoverability or exhaustion requirements under Section 1782, Credit Suisse USA urges the Court to infer from Top Matrix's prior discontinued attempt at litigation and restrictive Swiss discovery laws that Top Matrix anticipates a negative discovery ruling from the Swiss courts.  *Id*. at 18–19.  Additionally, Credit Suisse USA argues

that Section 1782 "was not intended 'as a vehicle to avoid . . . an unfavorable discovery decision' from a foreign tribunal."  Response at 17–18 (quoting *In re Kreke Immobilien KG*, No. 13 Misc. 110, 2013 WL 5966916, at *6 (S.D.N.Y. Nov. 8, 2013) (*invalidated by In re del Valle Ruiz*, 939 F.3d 520, 533 (2d Cir. 2018))).  It claims that Section 1782 could be used as "an excuse to circumvent [foreign] procedures altogether by seeking discovery in New York," ultimately acting as a Court of first resort, rather than assisting foreign tribunals as intended.  Response at 19 (quoting *In re Escallón*, 323 F. Supp. 3d 552, 560 (S.D.N.Y. 2018)).

Notwithstanding Credit Suisse USA's critiques, the third *Intel* factor does not require exhaustion of remedies, discoverability, or admissibility.  Although Top Matrix previously initiated, then ended, an attempt to litigate this matter, it never received a negative discovery decision from Swiss courts and cannot be said to be improperly attempting to avoid foreign restrictions.  Decurtins Decl. ¶¶ 13–14.  Credit Suisse USA was also unable to point to any specific Swiss policy that Top Matrix's request would circumvent, only suggesting that the Swiss interests in protecting bank secrecy could broadly be violated.  Response at 18.  Top Matrix has noted that it is willing to accommodate confidentiality requirements through protective orders and already has worked with Credit Suisse USA to resolve their concerns.  Calamari Reply Decl. ¶ 5 & Ex. B ("Glassman Email, Dec. 11, 2018").  Here, Top Matrix has not demonstrated intent to inappropriately circumvent foreign restrictions.  *Intel* Factor Three accordingly weighs in its favor.

### 3.  *Factor Four: Unduly Intrusive or Burdensome Requests*

The fourth *Intel* factor asks courts to determine whether the discovery request is "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 265.  Credit Suisse USA argues that the discovery request is unduly intrusive and burdensome, while Top Matrix claims that the request is

sufficiently tailored to its discovery needs. Response at 21. The Court finds that while Top Matrix's request is too broad, it can be appropriately trimmed.

To evaluate the scope of a Section 1782 request, the Court applies "the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." *Mees v. Buiter*, 793 F.3d 291, 302 (2d Cir. 2015). Under Rule 26, the court must consider whether the information requested is "relevant" and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The Court is encouraged to issue "a closely tailored discovery order rather than by simply denying relief outright" when considering the possible burden of a Section 1782 motion. *Mees*, 793 F.3d at 302 (citing *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995)). As exhaustion is not a requirement to ease the burden of discovery, "necessity of the materials sought is [also] not a precondition for discovery." *Mees*, 793 F.3d at 303.

Here, Credit Suisse USA likely has information relevant to the needs of the case, particularly relevant to Lescaudron's activities, as it disclosed the existence of Lescaudron's fraudulent scheme to U.S. investors in its 20-F filings from 2016-2018. Calamari Decl. ¶ 42. Accordingly, it could plausibly be aware of the circumstances relating to Lescaudron's wrongdoing as a member of Credit Suisse's "globally integrated network" in its efforts to respond to the effects of his criminal scheme relevant to U.S. investors. *Id*. ¶¶ 42–43. Top Matrix's request for information as currently contemplated, however, is overly burdensome. The proposed discovery request includes "any and all information" relating to Malkin, Top Matrix, Lescaudron's wrongdoings, general policies of Credit Suisse as relating to Malkin, and implementation of an unrelated settlement with the U.S. Department of Justice, monitored by Barofsky, spanning a period of more than 13 years. Response at 21. The burden on Credit Suisse USA to comb through "any and all information" relating to these broad matters and

14

ensure protection of confidentiality likely does not outweigh the benefit to Top Matrix, particularly considering that other parties, such as Credit Suisse, are also likely in possession of similar information.  Top Matrix is directed to submit a narrower discovery request more closely tailored to Credit Suisse's oversight of Lescaudron's wrongdoings and their relationship to Top Matrix.

Dougan, on the other hand, has already stated in a sworn deposition that he does not recall meeting Malkin or Lescaudron, or any specific information about Malkin's investments. Dougan Decl. ¶¶ 3–6.  The proposed subpoena would thus have little probative value, and Factor Four weighs in Dougan's favor.

## IV.    CONCLUSION

For the reasons stated above, Top Matrix's application for an order to take discovery against Credit Suisse USA for use in foreign proceedings is GRANTED insofar as it requests discovery relating to Top Matrix's contemplated litigation and DENIED in its current scope.  Top Matrix's application for an order to take discovery against Dougan is DENIED.

The parties are directed to meet and confer to negotiate a narrower scope of discovery, submit a revised request, and appear for conference on December 19, 2019 at 12:00pm.  The Clerk of the Court is respectfully directed to terminate the motion, Doc. 1.

It is SO ORDERED.

Dated:    January 15, 2020
          New York, New York

Edgardo Ramos, U.S.D.J.

15